# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01466-COA

JAMES FOSTER A/K/A JAMES H. FOSTER A/K/A JAMES FOSTER JR. A/K/A JAMES HENRY (JIMMY) FOSTER

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2017 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 03/26/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND TINDELL, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.	A Hinds County jury found James Foster guilty of burglary of a business. Foster was sentenced to seven years in the custody of the Department of Corrections as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015), without eligibility for parole. Foster filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, arguing that the State failed to prove a breaking

occurred, which is a required element of business burglary.[1] Foster timely filed a notice of appeal. Foster argues the evidence is insufficient to support a conviction for burglary of a business, and the proposed jury instruction for the lesser-included offense of trespassing should have been given. Because the State presented insufficient evidence for the element of "breaking," we reverse and render Foster's conviction for burglary of a business.

**FACTS**

¶2.     On December 21, 2013, Officer Desmond Barney with the Jackson Police Department (JPD) was dispatched to a house on 1008 Brookley Street in Jackson, Mississippi, due to a suspected burglary. Officer Barney was advised to be on the lookout for two white males and one white female in a blue Ford F-150 pickup truck. En route to the scene, Officer Barney passed a vehicle matching the description traveling away from the scene on nearby McDowell Road. Officer Barney conducted a traffic stop on the vehicle, which was occupied by three individuals matching the suspects' descriptions. A stove and a dishwasher were in the back of the truck. Foster was one of the occupants of the truck. After arresting the suspects, Officer Barney never went to investigate the dwelling.

¶3.     The three suspects were transported to "city holding" and interviewed by Detective Virgil Jarman with the property-crimes division of JPD. Foster told Detective Jarman that he had previously lived at the house years ago. He was walking around the location when he noticed the back door was open. He walked into the house, took the dishwasher and

---

[1] The record does not contain an order denying this motion, but Mississippi Rule of Criminal Procedure 25.3 provides that post-trial motions pending over thirty days are deemed denied.

stove, and called his girlfriend's son to come pick him up. They came to the location, loaded the appliances into the truck, and drove off before they were stopped and arrested by law enforcement. Foster explained that they had been trying to make some money by "scrapping"—picking up items and selling the scrap metal for money. During the interview, Foster admitted to wrongfully taking the items, but he explained that once he got to the dwelling "things kind of got out of control." During his investigation, Detective Jarman never went to the house.

¶4. John Ketchum, a self-employed real-estate broker, testified that in December 2013, the property was an unoccupied dwelling owned by his former client, True Wholesale Houses of Mississippi. Ketchum was hired by the company's owner, Mike Hanks, to take over the property's management, evaluate the rental property, and obtain quotes to renovate it. The property would be offered as a rental home "once it was operational." Ketchum testified the building was not "a place of business" but instead a single-family residential dwelling. But Detective Jarman explained that the house was considered a business for purposes of these charges because "any time you have a house for rent, it's listed as a business" since the property makes money for the owner through rent. Ketchum did not know the last time the house had been inhabited. Ultimately, the property was never renovated because Hanks never accepted the quotes to renovate it.

¶5. During Ketchum's examination, two photographs of the dwelling's kitchen were entered into evidence. Ketchum testified he had taken these photographs some time between September through November 2013, before the incident. The photograph labeled Exhibit

Two shows both a storm door and a solid metal or wooden back door. The storm door is shut, but the solid back door is open. The other photograph depicts the stove and dishwasher in the kitchen. Ketchum did not know if the appliances were operational.

¶6. After the State rested, Foster moved for a directed verdict, claiming the State had not proven the residence was a place of business.[2] The court overruled Foster's motion. Jury instructions on the elements of petit larceny and trespass were denied. Ultimately, the jury found Foster guilty of the crime charged.

## ANALYSIS

¶7. Foster argues that the trial court erred in denying his motion for a JNOV because the evidence is insufficient to support a conviction for burglary of a business. Although Foster challenges the sufficiency of the evidence for several of the crime's elements, we find merit to Foster's argument regarding the "breaking" element. Foster claims that he entered the house through an open door, and therefore this action does not constitute "breaking" as it pertains to the crime of burglary. We agree.

¶8. "The sufficiency of the evidence is challenged with a motion for a directed verdict, a request for a peremptory instruction, or a motion for judgment notwithstanding the verdict (JNOV)." *Pace v. State*, 242 So. 3d 107, 117 (¶24) (Miss. 2018). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Warren v. State*, 187 So. 3d 616, 627 (¶30) (Miss. 2016). "The

---

[2] At this time, defense counsel did not argue there was insufficient evidence for the "breaking" element.

4

[appellate court] must reverse and render if the facts and inferences 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.'" *Id.* (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶9.     The crime of burglary of a business is described as follows:

> Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private room or office therein, water vessel, commercial or pleasure craft, ship, steamboat, flatboat, railroad car, automobile, truck or trailer in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with or forming a part thereof, shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.

Miss. Code Ann. § 97-17-33 (Rev. 2014). The jury was instructed on the elements of burglary of a business. The jury was not given a definition of the term "breaking."

¶10.     The State did not meet its burden of proof to show Foster broke into the dwelling beyond a reasonable doubt. Although Foster did not testify at trial, Detective Jarman testified that Foster told him during his interview that he "was walking around the location when [Foster] noticed the back door was open." The only other evidence pertaining to the "breaking" element was the introduction of Exhibit Two, the photograph of the back door, offered during Ketchum's testimony. The photograph, taken from inside the kitchen, showed the solid metal or wooden back door open; however, there was also a storm door, which was closed. Ketchum provided this and another photograph of the kitchen to the State, but not until the morning of the trial. Defense counsel objected because there was no

5

indication of when the photographs were taken. The State represented that Ketchum took the photographs some time between September 14 and November 9, 2013, which is prior to the date charged in the indictment of December 21, 2013. Defense counsel argued that the photographs may not accurately reflect the property on that date. The State responded that Ketchum would only testify as to the condition of the property before this date as a "reference point" for the jury. The trial court found the photographs relevant for this purpose only and overruled Foster's objection. The State admitted there would be no evidence offered at trial showing how the property, including the back door, actually appeared on December 21.

¶11. This Court has discussed what constitutes the element of "breaking" for burglary-related crimes in *Ladd v. State*, 87 So. 3d 1108, 1114 (¶19) (Miss. Ct. App. 2012). "It is well-established law in Mississippi that a breaking is conducted by an act of force, regardless of how slight, necessary to be used in entering a building, such as turning a knob, a slight push to further open a door, or raising a latch." *Id.* (quoting *Davis v. State*, 910 So. 2d 1228, 1231 (¶8) (Miss. Ct. App. 2005)). "To constitute burglary, a 'structure must generally be closed. Otherwise the entry is merely a trespass, not a breaking and a burglary.'" *Id.* (internal quotation marks omitted) (quoting *Harris v. State*, 68 So. 3d 754, 757 (¶11) (Miss. Ct. App. 2011)). In *Ladd*, the defendant's act of walking through an open garage door did not satisfy the "breaking" element of burglary of a dwelling. *Id.* at 1115 (¶23).

¶12. Here, there was no evidence of the condition of the back door on the date of the

incident. In fact, none of the JPD police officers investigating the incident even went to the dwelling. The only photograph of the door shows the solid door open and the storm door closed, but Foster claimed he entered the dwelling through an open door. There is no proof the storm door was even there on the date of the incident—it could have been removed, or it could have been open. We conclude the State did not prove beyond a reasonable doubt that Foster actually opened either the storm door or the solid door in order to satisfy the element of "breaking."

¶13. While the jury could have considered Foster's entry into the dwelling a trespass, as was done in *Ladd*, the trial court denied Foster's jury instruction on this lesser-included offense. Although Foster raises this denial as an error, because our decision now benefits Foster, we decline to address the issue. The State has not made any argument that if no "breaking" element is found that the case should be remanded for sentencing on the crime of trespass.

¶14. Accordingly, we reverse and render Foster's conviction for burglary of a business.

¶15. **REVERSED AND RENDERED.**

**J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR. LAWRENCE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, WESTBROOKS, TINDELL, McDONALD AND McCARTY, JJ. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

**LAWRENCE, J., SPECIALLY CONCURRING:**

¶16. I agree with the majority that Foster's conviction must be reversed based on the well established law of the State of Mississippi. I write separately to express my concerns as to

7

why that reversal is necessary.

¶17.    It is axiomatic that the State has the evidentiary burden in a criminal prosecution to prove every essential element of the crime charged beyond a reasonable doubt. *Williams v. State*, 111 So. 3d 620, 624 (¶10) (Miss. 2013).  This burden of proof "never shifts from the State to the defendant." *Id.* (quoting *Sloan v. State*, 368 So. 2d 228, 229 (Miss. 1979)).  The entire fundamental foundation of the criminal justice system is that the innocent should suffer no harm under our law and that guilty persons should be held accountable for their illegal acts upon a constitutional and legal investigation and trial.  One of the cores of our separation of powers is that the executive branch (in this instance law enforcement) shall investigate those involved in violating the laws passed by the legislative branch of government.  That investigation must, at a minimum, include obtaining evidentiary proof of each and every essential element of the crime charged beyond a reasonable doubt.  The legislative branch has required that before a person can lose his or her liberty in this State for the crime of burglary, the State must prove, among other elements, that the perpetrator committed a "breaking" into a business of another.

¶18.    Here, the State failed to meet that burden because it presented insufficient proof that Foster "actually" or "constructively" broke into the house on December 21, 2013.  During the trial, the State introduced a photo of the house taken many weeks or months before the crime in question.[3]  The photograph introduced indicated the back door of the home in

---

[3] The exact date the photograph was taken was unclear.  Testimony at trial indicates it was taken sometime between September 14, 2013, and November 9, 2013.  The crime occurred on December 21, 2013.

question had two doors, one solid door and one storm door. The photograph depicted one door open and another door closed. At trial, the State offered no proof as to the condition of the door on the date of the crime because no detective or officer ever went to the scene to determine that condition.

¶19.   At trial, the State called the lead detective who had questioned Foster on the night of the crime. Foster told the detective that he entered the home when he noticed the "back door was open" and took the property. The State argued that because one door was open and one door was closed in the photograph taken substantially before the crime in question, and because Foster stated the "door" in the singular was "open" during his law enforcement statement, that he obviously broke and entered through one door when he entered the home.

¶20.   The State does not get to make "leaps of faith" concerning an essential element of its burden of proof. Rather, it must rely on actual proof. That proof could have been obtained in this case by going to the crime scene to investigate or asking a few more questions during Foster's law enforcement interview or both. The State did neither. Instead, it chose to rely on speculative arguments in an effort to clear the imposing hurdle of proof beyond a reasonable doubt. It made that choice to its detriment and contrary to well-established law.

¶21.   In *Ladd v. State*, 87 So. 3d 1108 (Miss. Ct. App. 2012), this Court reversed the case of *Chaney v. State*, 802 So. 3d 113 (Miss. Ct. App. 2001), and held the mere act of walking through a "garage door" was not sufficient to prove a "breaking" for the crime of burglary, codified in Mississippi Code Annotated section 97-17-23(1) (Supp. 2011). *Ladd*, 87 So. 3d 1115 (¶22). The Mississippi Supreme Court in *Watson v. State*, 123 So. 3d 446 (Miss.

2013), affirmed and adopted this Court's ruling in *Ladd*, stating, "[w]e agree with the Court of Appeals in *Ladd*, that merely walking through an open door does not satisfy the 'breaking' requirement for the burglary of a dwelling." *Id*. at 448 (¶8).

¶22. Further, the supreme court has held that in some instances "breaking" can be "constructive" depending on the facts of the particular case. *Christmas v. State*, 10 So. 3d 413, 422 (¶40) (Miss. 2009); *see also Hayne v. State*, 744 So. 2d 751, 753 (¶¶5-6) (Miss. 1999), and *Templeton v. State*, 725 So. 2d 764, 766 (¶4) (Miss. 1998). In *Watson*, the supreme court made clear in a footnote that, "our ruling today does not overrule our previous opinions regarding constructive breaking." *Watson*, 123 So. 3d at 448 n.7. The State did no investigation into the nature of the "breaking" by Foster in this case. Further, the State did not seek a "constructive" breaking instruction.

¶23. The citizens of this State expect its officials to conduct adequate investigations and obtain sufficient proof to ensure that the innocent are not wrongfully prosecuted and the guilty are held accountable. Without adequate investigations, it is easy to imagine a scenario where an innocent person is falsely accused and potentially deprived of the freedoms we cherish in this country. Likewise, without an adequate investigation, it is easy to imagine a scenario where, as here, the guilty are not held accountable for their criminal acts. The proper functioning of the criminal justice system is vitally dependent on the executive branch (here law enforcement) doing its job and investigating crimes for proof of each and every essential element. If the State cannot prove beyond a reasonable doubt each and every essential element of the crime charged under our law, then the individual is innocent of that

10

crime by definition.

¶24.    Here, the State relied solely on the words of Foster. Those words indicated he walked through an "open" door, and there was no further investigation to prove the truth or untruth of those words or status of the actual door on the night of the crime.[4] The only thing the State proved in this case was that Foster walked through the back door. The law of this State has been settled since 2012 that walking through an open door is insufficient to establish the "breaking" element of a burglary. *See Watson*, 123 So. 3d at 448 (¶7); *see also Ladd*, 87 So. 3d at 1115 (¶23). As a result, I agree with the majority that the conviction must be reversed.

**GREENLEE, WESTBROOKS, TINDELL, McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**

---

[4] Nothing was offered or proven by the State whether on the night in question "open," as used by the defendant, meant either:

(1)    The door was unlocked and closed, which would have constituted a "breaking," under our law, when the defendant pushed it open to enter; or

(2)    the door was open (meaning not closed), which would have constituted a trespass under our law, when the defendant walked through it to enter.